IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | | |
|---|---|---|
| Tonya R. Blake, | ) | C/A No.: 0:11-2825-MBS-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| Children's Attention Home, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

In this pro se employment discrimination case, plaintiff Tonya R. Blake is suing her former employer, Children's Attention Home ("Defendant"). Plaintiff alleges a claim for sex discrimination, which the court construes as brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII").

This matter comes before the court on Defendant's amended motion for summary judgment. [Entry #77]. Plaintiff filed a response to the motion [Entry #87], Defendant filed a reply [Entry #91], and Plaintiff filed a sur reply [Entry #92]. All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(g) (D.S.C.). Because the motion for summary judgment is dispositive, this report and recommendation is entered for the district judge's consideration. For the foregoing reasons, the undersigned recommends Defendant's motion be granted.

I.   Factual Background[1]

Defendant is a non-profit, 24-hour emergency shelter and long term facility for children who have been removed from their homes due to abuse, neglect, and/or abandonment by their parents or guardians. Defendant hired Plaintiff as a Residential Counselor on October 20, 2006. [Entry #77-2 at 1]. During the night shift, Plaintiff was responsible for supervising the children and checking on them every thirty minutes while they slept.

According to Defendant, on February 17, 2010, Executive Director Libby Sweatt-Lambert was informed that Plaintiff had been sleeping on duty. [Entry #77-1 at 3]. Defendant had recently installed security cameras throughout the cottages for safety reasons. [Entry #77-2 at 22–23]. Defendant contends that Plaintiff "is seen on these security cameras as being asleep for some time during her shift, placing a chair in a narrow hallway where she is seen motionless." [Entry #77-1 at 3].[2] Defendant viewed this incident as highly egregious because children who were in Defendant's protective custody were not supervised. *Id.*

---

[1] The following undisputed facts, viewed in the light most favorable to Plaintiff, are gleaned from the parties' briefing (much of which contains no citation to the record) and the accompanying exhibits. Additionally, while Defendant references Plaintiff's deposition, neither party has incorporated any part of the deposition into the record.

[2] Defendant provided Plaintiff with a copy of the video during discovery. Although Plaintiff alleges that the video is in Xvid format, which is not the original source, she submitted information about Xvid that indicates the difference with the source video is typically visually imperceptible. Neither party submitted a copy of the video with their briefs.

On February 19, 2010, Defendant terminated Plaintiff. Plaintiff contends that Sweatt-Lambert and Assistant Director Becky Wright informed her she was terminated her for "lack of performing job duties." [Entry #87-8 at 1]. According to Plaintiff, Wright showed her a video and asked her why she was sitting on the back hall for six hours. *Id*. Plaintiff alleges she was first informed in the EEOC's September 30, 2011 Right to Sue letter that the reason for her termination was because she was sleeping on shift. [Entry #1 at 6]. On October 17, 2011, Plaintiff filed her action in this court alleging sex discrimination.[3] [Entry #1].

II.     Discussion

    A.     Standard of Review

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored

---

[3] Although there is considerable discussion in Defendant's motion about Plaintiff's wage claim filed with the South Carolina Department of Labor, Licensing, and Regulation ("LLR"), there is no indication that Plaintiff has brought a wage claim in this case. In fact, Plaintiff states that the LLR documentation is not relevant to this case. [Entry #87 at 2]. Therefore, the undersigned has not addressed it.

3

information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

    B.    Analysis

To establish a prima facie case of gender discrimination under VII, a plaintiff must prove: (1) she is a member of a protected class; (2) she was performing satisfactorily; (3) she suffered an adverse employment action; and (4) similarly situated employees received more favorable treatment. *Coleman v. Maryland Court of Appeals,* 626 F.3d 187, 190 (4th Cir. 2010). The employer may then rebut the prima facie case by showing

that there was a legitimate non-discriminatory reason for the adverse action, after which the burden shifts back to the plaintiff to show that those reasons are pretextual. *Diamond v. Colonial Life & Acc. Ins. Co.,* 416 F.3d 310, 318 (4th Cir. 2005).

### 1. Plaintiff's Job Performance

Defendant concedes that Plaintiff is a member of a protected class and that she suffered an adverse employment action. However, Defendant argues that Plaintiff was not performing her job satisfactorily. In determining whether Plaintiff was satisfactorily performing her job, the court looks at how she was performing prior to the incident at issue in the lawsuit. *See, e.g., Belton v. Chester Lancaster Disabilties and Special Needs Board, Inc.*, No. 0:05-1649-MBS, 2007 WL 528064, *8 (D.S.C. 2007). Defendant contends that Plaintiff was "never a stellar employee" and supports this conclusion with letters of counseling for tardiness and a failure to follow trash procedures. [Entry #77-2 at 3–4]. The letters are dated 2006 and 2007. *Id*. Plaintiff, on the other hand, submitted her 2008 and 2009 performance reviews, in which she rated excellent and good, respectively. [Entry #87-6]. Therefore, Plaintiff has met her burden of showing that she was satisfactorily performing her job.

### 2. Treatment of Similarly-Situated Employees

Defendant also contends that Plaintiff has not met her burden of showing similarly-situated employees have been treated more favorably. Specifically, Defendant contends that in her deposition, Plaintiff could not name one individual who violated

policy by falling asleep during their shift.[4] [Entry #77-1]. Plaintiff alleged that a male employee named Ralph Froneburger fell asleep during a training session, but Defendant argues the misconduct was not the similar to Plaintiff's because Froneburger did not affect the immediate safety of the children by failing to provide supervision. [Entry #77-1 at 6–7].

In response, Plaintiff cites to her April 9, 2010 letter to the EEOC which lists several allegations of misconduct by Defendant's male employees. [Entry #87-8]. However, Plaintiff's letter lack sufficient detail about the alleged misconduct by male employees and does not contain any allegations of male employees sleeping while they are supposed to be supervising children.

Plaintiff also attaches affidavits from former employees of Defendant averring to male misconduct. For instance, Angela Jones, a former cook for Defendant, avers that "Mr. Ralph[5] was asleep in the dining hall during breakfast while residents were at the table with silverware." [Entry #87-13]. Jones alleges that she informed "administrative staff," but they did nothing. *Id*. Additionally, Jones avers that the mail delivery worker for Defendant often slept in front of Wright and Sweatt-Lambert. *Id*. The affidavit also contains other incidents of alleged misconduct by male employees unrelated to sleeping. *Id*. Similarly, former employee Stephanie Taylor averred that she saw Froneburger sleeping on duty "a lot," but "no one said anything to him." [Entry #87-15]. Taylor lists

---

[4] Because Defendant did not attach the relevant portions of Plaintiff's deposition, the undersigned is unable to review Plaintiff's testimony.

[5] Although it is not clear from the record, the undersigned assumes that references to "Mr. Ralph" in the affidavits refer to Ralph Froneburger.

6

additional incidents of alleged misconduct by male employees unrelated to sleeping. *Id*. Former employee Teya Jones averred that "[o]ne night at the end of 2009, I went to Freeman Cottage to take some laundry to be done, I saw Mr. Ralph sleeping in front of [the] third shift supervisor." [Entry #87-16].

When a plaintiff bases her discrimination claim on a similarly-situated comparator, it is the plaintiff's "task to demonstrate that the comparator is indeed similarly situated." *Haywood v. Locke*, No. 09-1604, 2010 WL 2711294, *2 (4th Cir. July 6, 2010) (citing *Tex. Dep't. of Comty. Affairs v. Burdine*, 450 U.S. 248 (1981)). "Plaintiff [is] required to show that they are similar in all relevant respects to their comparator. Such a showing would include evidence that the employees 'dealt with the same supervisor, [were] subject to the same standards and engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Id*. Here, Plaintiff has not provided any specific information about the sleeping incidents mentioned in the submitted affidavits, such as dates and times, whether the employees' responsibilities concerned supervision of the children, whether the conduct affected the children's safety, or whether Plaintiff and Froneburger reported to the same supervisor.

Most critically missing from Plaintiff's evidence is any proof that either Wright or Sweatt-Lambert had personal knowledge of the incidents in which Froneburger was seen sleeping. The Fourth Circuit has repeatedly explained that "it is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." *Evans v. Technologies Applications & Serv. Co.*, 80 F.3d 954, 960–61 (4th Cir. 1996) (internal

citations omitted). Plaintiff has not shown that Froneburger was similarly-situated because she has failed to show that the decision makers were aware of Froneburger's alleged misconduct.

Additionally, while Jones averred that a mail delivery employee slept in view of Wright and Sweatt-Lambert, Plaintiff has not shown that a mail delivery employee's sleeping would create a safety and security risk for the children in Defendant's protection. Therefore, the mail delivery employee is not similarly-situated to Plaintiff. Because Plaintiff has failed to provide a suitable comparator, she has failed to make a prima facie case of discrimination and it is recommended Defendant be granted summary judgment.[6]

### 3. Pretext Analysis

Plaintiff has failed to set forth a prima facie case because she has not shown that similarly-situated employees were treated more favorably. Even if Plaintiff could show a prima facie case, Defendant has set forth a legitimate, non-discriminatory reason for her termination: she was sleeping during her shift. Therefore, the burden shifts back to Plaintiff to show that Defendant's reason for terminating her was pretextual.

---

[6] Despite the recommendation, the undersigned is troubled by Defendant's argument that "the Court should find that any employee, male or female, could have been terminated by [Defendant] for sleeping on duty, and the choice of discipline of an employee is up to [Defendant], as it determines discipline on a case-by-case basis." Regardless of whether Defendant utilizes progressive discipline, the law prohibits Defendant from treating similarly-situated employees differently on the basis of sex. Here, Plaintiff failed to show a similarly-situated male was treated more favorably.

To show pretext, Plaintiff must show that Defendant's proffered reason for terminating her is unworthy of credence. "Title VII is not a vehicle for substituting the judgment of a court for that of the employer." *Jiminez v. Mary Washington College*, 57 F.3d 369, 377 (4th Cir. 1995). Courts do not sit as "super personnel departments second guessing an employer's perceptions of an employee's qualifications." *Malghan v. Evans*, 118 Fed.Appx. 731 (4th Cir. 2004) (citing *Smith v. University of N. Carolina*, 632 F.2d 316, 346 (4th Cir.1980)). In fact, "the law does not require an employer to make, in the first instance, employment choices that are wise, rational, or even well-considered, as long as they are nondiscriminatory. *Id.,* (citing *Powell v. Syracuse Univ.*, 580 F.2d 1150, 1156–57 (2d Cir. 1978)). The court's only concern is:

> whether the reason for which the defendant discharged the plaintiff was discriminatory. Thus, when an employer articulates a reason for discharging the plaintiff not forbidden by law, it is not our province to decide whether the reason was wise, fair, or even correct, ultimately, so long as it truly was the reason for the plaintiff's termination.

*DeJarnette v. Corning Inc.*, 133 F.3d 293 (4th Cir. 1998) (citations omitted).

Here, Plaintiff's only evidence of pretext is her allegation that Defendant did not tell her she was being terminated for sleeping at the time of her termination. [Entry #87 at 1]. Plaintiff alleges that she was first made aware of this purported reason from her termination when she received the EEOC's Right to Sue letter. *Id.*; Entry #87-7. However, Plaintiff's April 9, 2010 letter to the EEOC alleges that at the time of her termination, Wright and Sweatt-Lambert showed her the video from February 17 and asked her why she was sitting on the back hall for six hours. [Entry #87-8]. By showing her the video that reportedly shows Plaintiff sitting motionless, Plaintiff was on notice of

the reason for her termination. Plaintiff has not disputed that she was sleeping on shift that night. Because Plaintiff has not submitted evidence that tends to show that Defendant is lying about the reason for her termination, she has not demonstrated pretext, and the undersigned recommends Defendant be granted summary judgment.

III.    Conclusion

For the foregoing reasons, it is recommended that Defendant's amended motion for summary judgment [Entry #77] be granted and this case be dismissed with prejudice.

IT IS SO RECOMMENDED.

January 16, 2013                                            Shiva V. Hodges
Columbia, South Carolina                            United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**

10

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Larry W. Propes, Clerk
> United States District Court
> 901 Richland Street
> Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).